UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JIMMY BROWN, )<br>)<br>Defendant. ) | No. 6:10-CR-29-REW-HAI-1<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 87), the Court considers reported violations of supervised release conditions by Defendant Jimmy Brown.

District Judge Thapar entered Judgment against Defendant in March 2011 on Defendant's plea to one count of conspiracy to distribute oxycodone. D.E. 40 (plea agreement); D.E. 57 (Judgment). Defendant was sentenced to 135 months of imprisonment followed by three years of supervised release. D.E. 57 at 2-3. Defendant was released on March 4, 2020. The case was reassigned to Judge Wier. D.E. 85.

**I.**

On January 4, 2022, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges a single violation of the condition that prohibits Defendant from committing another federal, state, or local crime. According to the Report,

> On December 30, 2021, Amanda Perot, Jimmy Brown's ex-girlfriend, completed a petition for order of protection. In the petition, Perot states that at one point in the relationship, Brown placed both hands around her throat, making it hard for her to breathe. She yelled for Brown to stop, and he did. Perot also stated that Brown had previously grabbed her minor son by the neck.

>       On January 3, 2022, the undersigned contacted Amanda Perot who stated the alleged strangulation took place approximately five months ago. The incident involving her son occurred approximately one and a half months ago. Perot advised that Brown made threatening statements toward her through text message as recently as January 1, 2022.

Attached to the Report are the Order of Protection and the Petition for Order of Protection. According to the Report, "Strangulation in the First Degree is a violation of Kentucky Revised Statute 508.170, and is a Class C Felony, carrying a potential penalty of at least five years but not more than ten years." As a felony, Violation #1 is a Grade B violation.

On January 10, 2022, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 92. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant argued for release. The probation officer testified on the detention issue. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

Prior to the final hearing, the Court received from the probation officer a series of screenshotted text messages that contain threatening comments from Defendant.

At the final hearing on January 18, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 96.

First, the government moved to amend Violation #1 to include a misdemeanor offense— third-degree terroristic threatening, in violation of K.R.S. § 508.080. This charge was based on the text messages. Section 508.080(a) makes it a Class A misdemeanor when a person "threatens to commit any crime likely to result in death or serious physical injury to another person or likely to result in substantial property damage to another person." The plan, according

2

to the parties, was that Defendant would stipulate to the Grade-C terroristic-threatening violation. And in exchange the government would move to dismiss the Grade-B (felony) violation. The parties did not have an agreed recommended penalty.

Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #1. D.E. 96. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the alleged violation (as amended orally on the record). Defendant admitted he made the text-message threats. He said he was "engaged to this girl" and "was in love with her." But he found out she was cheating with a "bad" drug addict who is related to Defendant. Defendant said he got mad, and he and the other man exchanged threats. Defendant said he told the man he was going to "whoop his ass," though he had no intention of doing that. Defendant admitted he texted the man that he had other people out looking for him. The government thus established the violation under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, including the Report, accompanying documents, and text messages and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute oxycodone, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's conduct—as amended down—would qualify as a Grade C violation. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and Grade C violation, Defendant's range, under the Revocation Table of Chapter Seven, is eight to fourteen months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

The government requested a penalty of six months' incarceration (below the Guidelines Range of eight to fourteen months), with eighteen months of supervised release to follow.

The government pointed to several mitigating factors in support of its below-Guidelines recommendation. Defendant had performed well on supervision for almost eighteen months, which included no positive drug screens. And the violation conduct was not related to the underlying drug-distribution crime. Here, there is no evidence of drug use or distribution. What happened was an "unfortunate . . . domestic situation gone awry." An important relationship "went South," and Defendant responded by sending threatening messages. Given all this, the breach of the Court's trust was not especially severe.

On the other hand, the government noted, Defendant does have some history of violent or reckless behavior. He has a prior conviction for assault of a police officer and fleeing and evading. He has a Criminal History Category of VI, which automatically implicates the need to protect the public. A troubling aspect of the violation conduct was that Defendant's girlfriend and her new boyfriend appeared to be drug users, and this put Defendant potentially in contact with drug culture.

The government also requested the addition of a condition forbidding all forms of contact with Defendant's former girlfriend, her mother, her children, and the new boyfriend.

The defense requested a revocation sentence of time-served with a six months of home confinement. The defense explained that Defendant has obtained custody of his fifteen-year-old son, which speaks well of his character. Currently, Defendant's mother is watching the boy, but she is dealing with kidney cancer. The defense argued that home incarceration will allow Defendant to continue to care for his son and mother.

According to the defense, Defendant has worked hard since his release. He has passed all drug tests and has become a good member of society. But the situation here broke his heart. After he cleaned up his life, his girlfriend dumped him for a drug addict. Defendant was afraid that man would hurt her. The defense argued that the threats by Defendant were not serious. Defendant knew where the man lived and could have gone there directly if he really intended to assault him. Defendant's threatening messages, while criminal, were just blowing off steam.

The defense recommended anger management or mental health counseling. The defense had no objection to continuing with eighteen months of supervised release. The defense had no objection to the addition of the government's suggested non-contact condition.

The defense did note (and the probation officer confirmed) that, on September 16, 2020, Defendant tested positive on a urine test for alcohol consumption. He admitted drinking one beer the night before. The probation officer instructed Defendant he was not allowed to consume alcohol. And, to the officer's knowledge, Defendant had not drunk alcohol since.

Defendant addressed the Court. He said he agreed with his lawyer's presentation.

At the final hearing, the Court announced it would adopt the defense's recommendation. Defendant was ordered released as soon as he could be processed. He was reminded he remained under his existing conditions. And the Court instructed the probation officer to order Defendant to comply with the new no-contact condition, as described at the end of this Recommendation.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The Court adopts the defense recommendation. Defendant's release should be revoked with a sentence of time served. He should complete the remainder of his supervised-release term, but this term should begin with six months of home confinement and the addition of other conditions, as described below.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). As described in his PSR, Brown was directly involved in the illegal distribution of oxycodone pills. At one point, he discovered a hidden recording device on a confidential informant and placed the informant in a storage room. Officers then intervened and retrieved the informant from

Defendant's residence. As with the violation conduct, there existed a potential for violence. Defendant on supervision has shown no evidence of involvement with drugs.

The Court next considers Defendant's history and characteristics. Defendant cannot avoid that he has a Criminal History Category of VI. And yet on supervision he appears to have become a different, better person. Other than an incident with alcohol, he appears to have been a model supervisee for almost eighteen months. He has obtained custody of his teenage son and he was engaged to be married. The violation conduct resulted from an upsetting personal relationship experience. He appears genuinely remorseful. The Court and parties have faith that he can succeed another eighteen months on supervision, as even the government recommended a below-Guidelines penalty.

Another factor involves the need for training and treatment. Defendant has received some drug addiction and mental health counseling. According to the probation officer, Defendant's mental health provider is aware of anger issues. The Court will recommend a new assessment, which can be accomplished under his existing terms of supervision.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case. Defendant, who has an extensive criminal history, threatened violence. Fortunately, he did not act on that threat. And he has otherwise been law-abiding on supervision.

Another factor concerns the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the

criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant has violated his conditions by committing a crime. But the Court finds he is remorseful and has otherwise behaved well (aside from this incident provoked by a broken heart).

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the Court recommends a below-Guidelines penalty of revocation with time-served, followed by six months of home confinement as part of Defendant's existing term of supervision. The Court also recommends a no-contact condition. The parties agree that Defendant has experienced great improvement and the violation resulted from an intense emotional disturbance. Home incarceration will protect the public and should provide an adequate wake-up call to deter future violations from Defendant. Defendant got caught up in strong emotions and made some bad decisions, which he regrets. Defendant is reminded that he is being shown leniency. Any future violations will result in a harsher penalty.

Based on the foregoing, the Court **RECOMMENDS**:

(1) That the government's oral motion (to amend Violation #1 to include a Grade-C violation of committing misdemeanor third-degree terroristic threatening and dismiss the Grade-B violation for first-degree strangulation) be granted.

(2) That, upon his stipulation, Defendant be found guilty of Violation #1, as amended, a Grade C violation for committing misdemeanor third-degree terroristic threatening.

(3) That Defendant's release be **revoked** and he be sentenced to **time-served**.

(4) Reimposition of supervised release, to terminate on March 3, 2023, under the existing conditions, with the following modifications:

   (a) Home confinement for six months to begin immediately. Defendant must stay at his residence except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the probation officer.

   (b) The addition of a condition that Defendant comply with USPO instructions concerning location monitoring while on home confinement, to include efforts to have a landline phone installed/activated for RF location-monitoring purposes.

   (c) The addition of a condition prohibiting Defendant from having any form of contact with Amanda Perot, Ms. Perot's mother, her immediate family, and Preston Brown.

   (d) That, pursuant to existing Special Condition 3, Defendant be assessed upon release for anger management / mental health treatment.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the hearing, within **SEVEN days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of January, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge